IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| S-R Investments LLC, et al., | |
| Plaintiffs, | No. 22 CV 03781 |
| v. | Honorable Nancy L. Maldonado |
| Federal Insurance Company, et al. | |
| Defendants. | |

**Memorandum Opinion and Order**

This is an insurance coverage action brought by a series of related limited liability companies, collectively known as the SRI Parties,[1] against Defendant Federal Insurance Company ("Federal").[2] The SRI Parties are involved in two underlying state court disputes with Federal's insureds Christine Sibrava, Jessica Garner, and Stevard LLC (the "Stevard Parties"). The instant federal lawsuit relates to a dispute over the priority of the advancement of defense costs for the underlying actions: the SRI Parties acknowledge that they have a contractual obligation to advance the Stevard Parties' defense costs for the state court litigation, but argue that their obligation is secondary to Federal's obligations under its insurance policy issued to the Stevard Parties. The SRI Parties therefore seek a declaratory judgment that Federal is primarily liable to advance the Stevard Parties' defense costs, as well as equitable contribution and subrogation from Federal for the costs they have already advanced.

---

[1] "The SRI Parties" refers collectively to all Plaintiffs, which includes S-R Investments LLC and the following series of related LLCs: (i) S-R Investments LLC – All Cap Domestic Equities Series; (ii) S-R Investments LLC – Emerging Market Equities Series; (iii) SR Investments LLC – International Developed Equities Series; (iv) S-R Investments LLC – Real Assets Series; and (v) S-R Investments LLC – Global Tactical Allocation Series.

[2] The SRI Parties' pleadings refer to Defendant Federal as "Chubb," its ultimate parent company. The Court will use the name Federal, however, as it is the legal entity that is actually named in this case.

1

Pending now is Federal's motion to dismiss the SRI Parties' complaint. (Dkt. 31.) For the reasons stated in this Opinion and Order, the Court grants Federal's motion, and the case is dismissed with prejudice.

### Background[3]

The Court set forth the relevant background in its prior order on the SRI Parties' motion for remand (Dkt. 43) and will restate that background here, with additional details as necessary, to provide context for the Court's decision.

#### A. The underlying state court actions

The SRI Parties are a series of limited liability companies organized under the laws of Delaware, with their principal place of business in Illinois. (Dkt. 1-1 ¶ 3.) In November 2016, the SRI Parties entered into an Amended and Restated Limited Liability Company Agreement (the "LLC Agreement") to install Defendant Stevard LLC as the manager of all the associated LLCs. (Dkt. 1-1 ¶ 3; *see also id.* at 19.) Defendants Christine Sibrava and Jessica Garner, the president and vice president of Stevard LLC, respectively, were designated by Stevard LLC to oversee the SRI Parties' investments. (*Id.* ¶ 3; Dkt. 26-1 ¶ 4.) Over the course of the next several years from 2017–2020, the Stevard Parties continued to manage the SRI Parties' investments while withdrawing certain profits interest pursuant to the LLC agreement. (Dkt. 26-1 ¶ 4.)

---

[3] The Court takes the following factual background primarily from the well-pled allegations in the Complaint (Dkt. 1-1), and assumes the allegations to be true for the purposes of the instant motion. *See, e.g.*, *Anicich v. Home Depot U.S.A., Inc.*, 852 F.3d 643, 648 (7th Cir. 2017). The Court has also relied on the relevant written agreements, which are considered part of the pleadings because they are either attached as exhibits to the Complaint itself (as is the case for the SRI Parties' agreement with the Stevard Parties), or are attached to Federal's motion to dismiss and are directly referenced in the Complaint and are central to the SRI Parties' claims (as is the case for the Federal insurance policy). *See* Fed. R. Civ P. 10(c); *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013) ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.") (citation omitted). The Court has additionally reviewed pleadings from the related state court actions, which Federal has attached to its motion, as the materials are in the public record and the proceedings are referenced in the Complaint. *See, e.g.*, *Gavin v. AT&T Corp.*, 543 F. Supp. 2d 885, 890 n.2 (N.D. Ill. 2008) ("[T]he Court is permitted to consider matters that are in the public record in deciding a motion to dismiss . . . .").

Starting in 2020, some of the SRI Parties' individual members began to dispute the amount of profits interest being withdrawn by the Stevard Parties. (*Id.* ¶ 5.) Eventually, in January 2021, Stevard LLC and the SRI Parties terminated their management relationship, and Stevard LLC subsequently claimed that the SRI Parties still owed Stevard LLC additional profits interest of at least $1 million. (*Id.* ¶ 6.) Unable to resolve their dispute, Stevard LLC filed suit in the Circuit Court of Cook County, Illinois, Chancery Division, alleging claims against the SRI Parties, including breach of contract, accounts stated, and unjust enrichment (Case No. 2021CH00341, hereinafter "the Underlying Lawsuit"). (*See* Dkt. 26-3.) In February 2021, the SRI Parties filed their own counterclaims against the Stevard Parties in the Underlying Lawsuit, alleging multiple claims, including fraud, breach of contract, and breach of fiduciary duty. (Dkt. 26-4.)

In March 2021, shortly after the Underlying Lawsuit was initiated in Illinois state court, the Stevard Parties filed a new legal action against the SRI Parties in the Delaware Court of Chancery (Case No. 2021-0232, hereinafter "the Delaware Action"). (Dkt. 26-1.) In the Delaware Action, the Stevard Parties claimed that the LLC Agreement required that the SRI Parties advance the Stevard Parties' attorneys' fees and defense costs in connection with defending against the counterclaims filed by the SRI Parties in the Underlying Lawsuit. (*See id.* ¶¶ 30–34.) In particular, the LLC Agreement includes a broad indemnification clause requiring the SRI Parties to indemnify the Stevard Parties "to the fullest extent permitted by law" should they be made a defendant in any proceeding arising from their being a manager of the SRI Parties. (Dkt. 1-1 at 28.) The agreement goes on to state that the SRI Parties shall "pay or reimburse, in advance or during the course of any proceeding, reasonable expenses incurred by any Indemnitee who or which was, is or is threatened to be made a named defendant or respondent in any legal proceeding because the person is or was a Member or a Manager" of the SRI Parties. (*Id.*)

3

After some initial proceedings in the Delaware Action, in April 2021 the parties submitted a stipulated order to the court, which the court subsequently entered, that required the SRI Parties to "advance to [the Stevard Parties] the reasonable attorneys' fees and expenses that [the Stevard Parties] incur (or have incurred) in connection with defending against the Counterclaims" in the Underlying Lawsuit. (Dkt. 26-2 ¶ 1; *see also* Dkt. 1-1 ¶ 39.) Specifically, the agreed order required the SRI Parties to advance 100% of the Stevard Parties' attorneys' fees in connection with their defense against the SRI Parties' counterclaims, and 50% of those costs that related to both the Stevard Parties' defense and their affirmative claims, *i.e.*, the costs that could not solely be attributed to their defense. (Dkt. 1-1 ¶ 39.) The Delaware court also granted a request for "fees on fees," requiring that the SRI Parties pay attorneys' fees and expenses that the Stevard Parties incurred in litigating the Delaware Action. (Dkt. 26-2 ¶ 3.)

After the SRI Parties entered into the stipulated order to advance the Stevard Parties' defense costs in the Underlying Lawsuit, the SRI Parties learned that the Stevard Parties had an insurance policy issued by Federal, which may also have provided coverage for the defense costs the Stevard Parties were incurring. (*See* Dkt. 1-1 ¶ 40.) Federal issued an Asset Management Protector Policy (the "Policy") to Stevard LLC as the named insured. (Dkt. 26-5.) The Policy includes a Professional Liability Coverage Part, which the SRI Parties claim provides coverage for the same defense costs associated with the Underlying Lawsuit that the SRI Parties are advancing pursuant to the LLC Agreement and stipulated order entered by the Delaware Court. (*See* Dkt. 1-1 ¶¶ 2, 17–19.)

According to the SRI Parties, the Stevard Parties tendered a claim for those defense costs to Federal, and Federal agreed to provide coverage under the Policy subject to a reservation of rights, but did not begin advancing those costs because they were being covered by the SRI Parties.

4

(*Id.* ¶¶ 31–35.) The SRI Parties further claim that the Stevard Parties later demanded that Federal begin advancing its defense costs, and that Federal ultimately agreed it would provide coverage for half of the "intermingled attorneys' fees" that the SRI Parties were not obligated to advance at 100% under the stipulated order entered in the Delaware Action. (*Id.*)

Eventually, after learning about the Federal insurance policy, the SRI Parties state that they sent a demand to Federal that it reimburse the SRI Parties for the defense costs they had advanced to the Stevard Parties to date and that Federal agree to advance costs going forward. (Dkt. 1-1 ¶ 48.) Federal responded that it had no duty under the Policy to provide the SRI Parties with coverage for the Underlying Lawsuit. (*Id.* ¶ 49.)

### B. Procedural history of the instant federal action

After Federal refused to reimburse the SRI Parties, they brought the instant case against Federal, which was initially filed in the Circuit Court of Cook County, Chancery Division, Case number 2022CH06196. (Dkt. 1-1.) In their Complaint, the SRI Parties claim that Federal has a valid and enforceable policy with the Stevard Parties under which Federal has a duty to advance the Stevard Parties their defense costs in the Underlying Lawsuit. (*Id.* ¶¶ 54–58.) The SRI Parties go on to claim that Federal is "primarily liable" to advance the Stevard Parties' defense costs, and that the SRI Parties are "secondarily liable." (*Id.* ¶¶ 59–60.) The SRI Parties request that the Court enter a declaratory judgment that Federal is primarily liable to advance defense costs, or in the alternative, that Federal's duty is co-equal with the SRI Parties' duty to advance costs under the LLC Agreement. (*Id.* at 15.) The SRI Parties also bring claims for equitable subrogation, or in the alternative, equitable contribution, seeking reimbursement from Federal for the costs that the SRI Parties have advanced to the Stevard Parties to date. (*See id.* ¶¶ 53–74.)

On July 21, 2022, Federal filed a notice of removal pursuant to 28 U.S.C. § 1441 seeking to remove the SRI Parties' action from the Circuit Court of Cook County to this Court. (Dkt. 1.) On August 10, 2022, the SRI Parties timely filed a motion to remand on the grounds that the parties were not completely diverse because the SRI Parties and Stevard Parties were all citizens of Illinois. (Dkt. 20.) Separately, on September 21, 2022, Federal filed a motion to dismiss the SRI Parties' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 31.)

On April 18, 2023, the Court issued an Order denying the SRI Parties' motion to remand, based on the Court's finding that the Stevard Parties were nominal defendants whose citizenship could be disregarded for the purposes of assessing diversity jurisdiction. (Dkt. 43.) The Court deferred ruling on Federal's motion to dismiss, however, because it appeared from the parties' briefing that many of the issues raised in Federal's motion overlapped with issues that were being litigated concurrently in the Delaware Action. Specifically, the Stevard Parties had recently asked the Delaware court to determine whether the availability of insurance coverage from Federal affected their right to seek advancement from the SRI Parties. The Court determined it was appropriate to defer addressing Federal's motion to dismiss until such time as the Delaware court addressed the parties' dispute, given that a ruling could impact the scope of the parties' dispute in this action, and had the potential to carry preclusive effect. The Court therefore ordered the parties to file a further status report notifying the Court of the Delaware court's decision once issued, and granted them leave to also file supplemental briefing on the motion to dismiss to present their positions as to what effect, if any, a decision from the Delaware court should have on this case.

The parties subsequently notified the Court via status report that the Delaware court issued its ruling on April 10, 2023. (Dkt. 46.) The parties then filed their supplemental briefs with their positions on the impact of the ruling on May 12, 2023. (Dkts. 47–49.) The Court therefore turns to

Federal's pending motion to dismiss.

## Legal Standards

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). The Court need not, however, accept conclusory allegations, or allegations that contain only legal conclusions. *See, e.g.*, *Dix v. Edelman Fin. Servs., LLC*, 978 F.3d 507, 513 (7th Cir. 2020) (citations omitted). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## Discussion

Federal raises two overarching arguments for dismissal of the SRI Parties' Complaint: (1) the SRI Parties have no legal right to sue for remedies under Federal's insurance policy issued to the Stevard Parties, and therefore they lack prudential standing to bring suit because they are not real parties in interest; and (2) the SRI Parties otherwise fail to state any valid claim that they are entitled to equitable contribution or subrogation from Federal. (Dkt. 32 at 6–16.)[4]

---

[4] The Stevard Parties also submitted briefing in response to Federal's motion. But the Court has already ruled that the Stevard Parties are nominal defendants with no legal interest in this action because the Complaint contains no causes of action against them. (Dkt. 48.) The Court therefore may disregard their arguments with respect to dismissal.

As an initial matter, the Court notes that, although Federal presents its standing argument as a separate threshold issue, the question of whether the SRI Parties have prudential standing to bring this suit turns, in large part, on a determination of the substantive question of whether they have any right to seek equitable contribution or subrogation from Federal in the first place. Prudential standing is a judicially-created limit on the exercise of federal jurisdiction in certain circumstances, and is distinct from the standing requirements under Article III of the Constitution. *See generally MainStreet Org. of Realtors v. Calumet City, Ill.*, 505 F.3d 742, 745 (7th Cir. 2007) ("This doctrine precludes the federal courts from exercising jurisdiction over some types of case[s] that Article III would not forbid the courts to adjudicate."). Those limits on standing include, among other things, the "general prohibition of a litigant's raising another person's legal rights." *See Gen. Med., PC v. United States*, No. 3:20-MC-53-NJR, 2020 WL 7209278, at *3 (S.D. Ill. Dec. 7, 2020) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014)). Rule 17(a), which requires that "[e]very action shall be prosecuted in the name of the real party in interest," is the codification of this particular prudential standing limitation. *See Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 756 (7th Cir. 2008).

Federal claims that the SRI Parties have no prudential standing because they are essentially seeking a determination of the Stevard Parties' rights under the Federal Policy, an insurance contract to which they are not a party. But that is not the correct framing of the SRI Parties' claims in this case. Rather, as they point out in their response, the SRI Parties are seeking a determination of their own rights to seek contribution and subrogation directly from Federal for defense costs they have advanced to the Stevard Parties. Thus, in order to determine whether the SRI Parties are real parties in interest seeking to vindicate their own rights, the Court must necessarily evaluate whether they can in fact state any viable claim against Federal for contribution or subrogation. The

8

Court will therefore focus its discussion on this issue of whether the SRI Parties have plausibly stated a claim for relief. For the reasons that follow, the Court ultimately finds that they have not, which requires dismissal of this action with prejudice, irrespective of any separate issue of prudential standing.

### A. The SRI Parties have no legal right to seek equitable contribution from Federal.

Under Illinois law,[5] contribution in the context of insurance law is "an equitable principle arising among coinsurers which permits one insurer who has paid the entire loss, or greater than its share of the loss, to be reimbursed from other insurers who are also liable for the same loss." *Home Ins. Co. v. Cincinnati Ins. Co.*, 821 N.E.2d 269, 276 (Ill. 2004) (citations omitted). "Contribution applies to multiple, concurrent insurance situations and is only available where the concurrent policies insure the same entities, the same interests, and the same risks." *Id.*

Federal argues that the SRI Parties cannot state a claim for contribution because they are not a "coinsurer," that is, they are not an insurance company that issued any insurance policy to the Stevard Parties to cover the same risk as Federal, but rather entered into an independent LLC management agreement that included an indemnification and advancement of defense costs provision. (Dkt. 32 at 8–9.) The SRI Parties respond by arguing that Illinois law does not limit contribution claims to coinsurers, but rather the principle can apply when any two parties have "a joint financial obligation to a third party created by agreement or statute." (Dkt. 39 at 7) (citing *Flynn v. Levy*, 832 F. Supp. 2d 951, 955 (N.D. Ill. 2011)).

The SRI Parties are technically correct that contribution is not strictly limited to coinsurers, and can apply when parties have a "joint financial obligation" to the same party. *See Flynn*, 832 F. Supp. at 955. But this exception to the general rule does not save their claims. As Federal points

---

[5] The parties agree that Illinois law applies to the Federal Policy and the SRI Parties' claims based on the Policy.

9

out in its reply, there is no allegation that a statute creates a joint obligation between the SRI Parties and Federal as to the Stevard Parties, nor are there any allegations that the SRI Parties and Federal entered into any written agreement to be jointly responsible for the Stevard Parties' defense costs. Rather, each party entered into separate and independent agreements with the Stevard Parties, and the LLC Agreement and Federal Policy in no way incorporate one another, nor contain any language suggesting that the obligations in those agreements are jointly shared by the parties or are dependent upon one another. Indeed, as the Delaware court ruled in addressing the priority of coverage under the LLC Agreement in particular, the "advancement right [in the LLC Agreement] does not say anything about secondary liability. Instead, it says the opposite by providing that '[t]he indemnification rights granted by this Section 3.08 are in addition to any rights against third parties, whether in the nature of an insurance claim . . . or otherwise.'" (*See* Dkt. 48-1 at 11) (copy of Delaware court's April 10, 2023 order). The Court agrees with the Delaware court's reading of the plain language of the LLC Agreement as creating a separate additional obligation that is independent of any insurance coverage.[6] And the Federal Policy makes clear that its coverage is independent of others that may be liable to the Stevard Parties: the Policy contains a subrogation provision that grants Federal the right to recover any amounts paid against any parties that may have a duty to indemnify the Stevard Parties. In other words, Federal is not jointly obligated with other parties who may be liable to pay the Stevard Parties, but rather may actually recover any funds it has paid to the Stevard Parties against those other liable parties through subrogation. In short, the fact that the SRI Parties' and Federal's separate and independent obligations to the

---

[6] As noted above, the Court asked the parties to file supplemental briefing addressing whether the Delaware court's decision carried any preclusive effect in this action. But in its supplement, Federal concedes that the Delaware ruling does not carry preclusive effect because it is not a final judgment, and Federal is not a party to the Delaware Action. The Court thus will not view the decision as controlling in a claim or issue preclusion sense, but still may rely on the court's analysis as persuasive authority.

Stevard Parties may overlap is not the same thing as saying both are "jointly obligated" to pay the Stevard Parties' defense costs.

A brief review of the Illinois case authority cited in *Flynn*, the same decision pointed to by the SRI Parties in support of their argument, demonstrates why the SRI Parties and Federal do not constitute "joint obligors" for the purposes of equitable contribution. In each of the cases cited in *Flynn*, Illinois courts recognized an equitable right of contribution between non-insurers where the parties had some other common law, statutory, or contractual relationship that created the joint obligation. *See Roe v. Estate of Farrell*, 372 N.E.2d 662, 665 (Ill. 1978) (involving a joint tenancy); *Ruggio v. Ditkowsky*, 498 N.E.2d 747, 750 (Ill. App. Ct. 1986) (involving co-signed promissory notes); *Tembrina v. Simos*, 567 N.E.2d 536, 538 (Ill. App. Ct. 1991) (involving partners in partnership jointly and severally liable for payments); *Fletcher v. Marshall III*, 632 N.E.2d 1105, 1106 (Ill. App. Ct. 1994) (involving co-tenants on lease); *Aardema v. Fitch*, 684 N.E.2d 884, 890 (Ill. App. Ct. 1997) (involving directors with common corporate obligations under state law). Here, as noted above, there is nothing in either agreement or under statute or common law that creates any relationship between Federal and the SRI Parties, let alone any language in either agreement suggesting that both parties are agreeing, expressly or implicitly, to be *jointly* obligated to the Stevard parties. The situation is thus distinguishable from those circumstances where non-coinsurers have been permitted to seek equitable contribution.

In sum, the SRI Parties' contribution claim fails as a matter of law, because they are not a coinsurer with Federal nor jointly obligated to the Stevard Parties, and therefore have no right to seek equitable contribution from Federal. *See Lend Lease (US) Constr. Inc. v. Admin. Emp. Servs., Inc.*, 840 F.3d 386, 387 (7th Cir. 2016) (affirming district court's dismissal of general contractor's contribution claim against a subcontractor's insurance company to recover amounts paid for

worker compensation claims, where the general contractor failed to allege it was a coinsurer, and instead had an independent contractual obligation to pay such claims).[7]

### B. The SRI Parties have no legal right to seek equitable subrogation from Federal.

The Court turns next to the SRI Parties' subrogation claim. Equitable subrogation is a principle that allows a party that has paid for a loss to recover from another party who is ultimately responsible and should have paid. *See Home Ins. Co.*, 821 N.E.2d at 276; *see also Century Indem. Co. v. Am. Home Assurance Co.*, 2017 IL App (1st) 163311-U, ¶ 16, 2017 WL 5983716, at *3 (Ill. App. Ct. 2017) (defining subrogation as a broad doctrine in which one "pays a debt for which another is primarily liable and which in equity and good conscience should have been discharged by that latter"). Under Illinois law, the elements of an equitable subrogation claim are as follows:

> (1) the defendant carrier must be primarily liable to the insured for a loss under a policy of insurance; (2) the plaintiff carrier must be secondarily liable to the insured for the same loss under its policy; and (3) the plaintiff carrier must have discharged its liability to the insured and at the same time extinguished the liability of the defendant carrier.

*See Home Ins. Co.*, 821 N.E.2d at 280.

Federal argues that the SRI Parties' subrogation claim fails because they are not an insurer, and there is no authority for a non-insurer seeking subrogation from an insurance company. Federal further argues that the SRI Parties have failed to plead, and in fact cannot possibly plead, sufficient facts establishing any of the above elements of equitable subrogation. The Court ultimately agrees with Federal's second argument that the SRI Parties cannot state a claim for equitable subrogation

---

[7] The SRI Parties attempt to avoid dismissal by arguing that they have expressly alleged that Federal and the SRI Parties' obligations to the Stevard Parties are at least "co-equal," and that this allegation is sufficient at the pleading stage to survive a Rule 12(b)(6) motion. (Dkt. 39 at 8; Dkt. 1-1 ¶ 70.) But as Federal points out in reply, the Court need not credit such an allegation that merely states a legal conclusion or recites the elements of a cause of action. *See Dix*, 978 F.3d at 513; *Twombly*, 550 U.S. at 555. Contract interpretation is a matter of law, and both relevant agreements are incorporated into the pleadings. *Supra* note 3. The SRI Parties have pointed to no language in the agreements, or any other facts or authority outside the agreements, that suggest such a "co-equal" obligation between the parties. In the absence of any contractual language or other allegations that would support the inference of a joint or co-equal obligation, the SRI Parties' conclusory allegations are simply insufficient.

in this case. The Court therefore need not resolve whether a non-insurer such as the SRI Parties can bring such a claim as a general matter.

The fatal flaw in the SRI Parties' claim for subrogation is that they cannot possibly establish that they are "secondarily liable" for the advancement of defense costs to the Stevard Parties, given the plain language of the LLC Agreement. As noted above, the relevant section of the LLC Agreement expressly provides that "[t]he indemnification rights granted by this Section 3.08 are *in addition to* any rights against third parties, whether in the nature of an insurance claim . . . or otherwise." (Dkt. 1-1 at 28; Dkt. 48-1 at 11.) (emphasis added) This contractual language says nothing about priority of payments with respect to other sources of coverage or indemnification. Instead, the agreement unambiguously creates a freestanding obligation for the SRI Parties to advance defense costs to the Stevard Parties irrespective of the Stevard Parties' rights to seek recovery from other parties, including explicitly from insurance. This was the exact holding of the Delaware court when confronted with this question in the Delaware Action. (Dkt. 48-1 at 11–12) ("As a matter of Delaware law, an advancing party must provide advancements, 'notwithstanding any similar rights a covered individual may have from other sources.'"). Delaware law governs the SRI Parties' advancement obligations under the LLC Agreement, and this Court gives great persuasive weight to the Delaware court's holding of what Delaware law requires the SRI Parties to do under the agreement. The Court thus concludes, consistent with the Delaware court's holding, that the straightforward language of the LLC Agreement provides that the SRI parties' advancement obligations exist independently of any other sources of advancement. The SRI Parties thus cannot establish that they are secondarily liable to advance defense costs, a necessary element of their claim.

13

The SRI Parties attempt to sidestep this issue by pointing to other language in the indemnification provision of the LLC Agreement, which they contend establishes that Federal is primarily liable and that the SRI Parties' obligations are secondary. In particular, the SRI Parties point to language in the agreement which states that "[SRI] shall use its best efforts to cause its insurance providers to satisfy any claims under this Section 3.08 to the fullest extent of the coverage provided, notwithstanding any other indemnities or insurance available to any Indemnitee from any other person." (Dkt. 39 at 12; Dkt. 1-1 at 29.) But the SRI Parties' argument is a nonstarter. Even if the reference to "best efforts" to secure insurance coverage implicitly created some primacy of insurance payments—which it plainly does not under Delaware law and the other contract language discussed above— this provision refers to the SRI Parties' obligation to secure coverage from *their* insurance. The Federal Policy is not the SRI Parties' insurance, it is issued to the Stevard Parties and the SRI Parties are not included in coverage under the contract. The SRI Parties claim the Federal Policy nonetheless falls under this provision because it was the SRI Parties that purchased the Federal Policy though their manager, Stevard LLC. But even if that is the case, it is not a plausible reading of this section of the LLC Agreement to read "SRI's insurance providers" as providers that insure other parties, even though the premium may have been paid by the SRI Parties. Instead, the Court finds that the unambiguous language refers to insurance policies issued to the SRI Parties. The provision thus does not create any secondary liability for the SRI Parties nor render Federal primarily liable. *See generally Right Field Rooftops, LLC v. Chi. Cubs Baseball Club, LLC*, 870 F.3d 682, 690 (7th Cir. 2017) ("A court must initially look to the language of a contract alone . . . . If the words in the contract are clear and unambiguous, they must be given their plain, ordinary and popular meaning.") (citation omitted).

In sum, the SRI Parties cannot establish that they are "secondarily liable" for the advancement of defense costs. Their subrogation claim thus fails.[8]

### C. The SRI Parties' declaratory judgment claim necessarily fails and any amendment would be futile.

Having found that the SRI Parties have failed to state a claim for equitable contribution or subrogation, the case must therefore be dismissed. It is true that the SRI Parties also bring an additional claim for declaratory judgment under Illinois law. (Dkt. 1-1 at 14) (citing 735 ILCS 5/2-701). While Federal's motion does not raise any arguments specific to the SRI Parties' separate declaratory judgment claim, the Court's finding that the SRI Parties are not entitled to contribution or subrogation necessarily requires dismissal of their declaratory judgment claim as well. Specifically, the SRI Parties seek a declaration that Federal is primarily liable for the advancement of defense costs to the Stevard Parties, or alternatively, that Federal's liability is "co-equal" with the SRI Parties'. But as explained above, there is nothing in either the LLC Agreement or the Federal Policy that establishes that Federal's obligation is primary over, or co-equal with, the SRI Parties' obligations. Rather, each agreement creates separate independent obligations, and the SRI Parties have an independent obligation under the express terms of the LLC Agreement to advance defense costs to the Stevard Parties irrespective of any other sources, including insurance. There are thus no grounds for a declaratory judgment as to the priority of payments to the Stevard Parties as between the SRI Parties and Federal, and the SRI Parties' declaratory judgment claim must therefore be dismissed. *See Lend Lease (US) Constr. Inc.,* 840 F.3d at 388 (affirming dismissal of

---

[8] The SRI Parties' failure to establish this single element of their claim requires dismissal of this cause of action on its own, without needing to reach the other elements. The Court notes, however, that it would also find that the SRI Parties have failed to demonstrate the other elements of their subrogation claim. First, they cannot establish the first element that Federal is primarily liable under its Policy; the Policy contains a subrogation provision that allows Federal to seek reimbursement for any fees it advances to the Stevard Parties, which indicates that it is Federal that is secondarily liable for the advancement of defense costs. Second, the SRI Parties cannot establish that they have discharged their liability to the Stevard Parties, because the Underlying Lawsuit and Delaware Action are both ongoing, and therefore the SRI Parties' advancement obligations are ongoing and have not been discharged.

declaratory judgment claim where the court had already found the general contractor had no right to seek contribution from the subcontractor's insurer, meaning there were no grounds for a declaratory judgment).

All that remains is the question of whether the Court should allow the SRI Parties to file an amended complaint. The SRI Parties do not specifically request leave to amend in their response to dismissal. Even if they had, the Court finds that any amendment would be futile, as the unambiguous language of the agreements, and relevant caselaw, demonstrate that the SRI Parties cannot possibly state a claim against Federal with respect to the priority of payment of defense costs to the Stevard Parties. The case will therefore be dismissed with prejudice.

## Conclusion

For the foregoing reasons, Federal's motion to dismiss is granted, and the case is dismissed with prejudice.

ENTERED: 3/30/24

Nancy L. Maldonado

United States District Court Judge